**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

IT NETWORK SOLUTIONS, LLC,                  :
                                            :
                                Plaintiff,  :
                                            :
                    v.                      :      Civ. Action No. 14-3455 (FLW)(DEA)
                                            :
KASEYA US SALES, LLC.                       :                **OPINION**
                                            :
                               Defendant.   :
                                            :
                                            :
                                            :

---

**WOLFSON, United States District Judge**

    This lawsuit concerns the allegedly unlawful payments deducted from a bank account of Plaintiff IT Network Solutions, LLC ("IT Network Solutions," or "Plaintiff") by Defendant Kaseya U.S. Sales, LLC ("Kaseya," or "Defendant"). Plaintiff has alleged the following causes of action: (1) in Count Two,[1] breach of contract, (2) in Count Three, fraud, (3) in Count Four, unjust enrichment, (4) in Count Five, conversion, (5) in Count Six, breach of the duty of good faith and fair dealing, and (6) in Count Seven, a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2 *et seq*. Defendant has moved to dismiss Plaintiff's Complaint on the basis of, *inter alia*, a forum selection clause directing all litigation to the state and federal courts located in Santa Clara County, California. In its opposition, Plaintiff requests, in the alternative, that the case be transferred pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)") instead of being dismissed.

---

[1] Count One of Plaintiff's Complaint merely contains the facts common to all of the ensuing causes of action. *See* Compl.

For the reasons set forth below, the Court finds the forum selection clause valid and enforceable and transfers the case to the Northern District of California.

## I.      Background

The following allegations are taken from Plaintiff's Complaint and are accepted as true for the purposes of this motion to dismiss. Defendant Kaseya is a Delaware corporation engaged in the business of computer software sales and support. Compl. at ¶ 1. Plaintiff IT Network Solutions is in the business of selling, designing, installing, and maintaining computer networks and data solutions. *Id.* at ¶ 7. IT Network Solutions entered into a contract with Kaseya for the purchase of 2,500 licenses for Kaseya VSA software[2] at a purchase price of $112,500, with a $10,000 down payment. *Id.* at ¶¶ 8, 11. According to IT Network Solutions, Kaseya began deducting payment from IT Network Solutions's credit card, including a maintenance fee that was deducted without express authorization from IT Network Solutions. *Id.* at ¶¶ 9–10. As a result, IT Network Solutions alleges it paid $136,984.89 in total, which is in excess of the quoted cost for the licenses. *Id.* at ¶ 12.

When IT Network Solutions stopped additional payments on the account, IT Network Solutions alleges that Kaseya advised that since IT Network Solutions had not paid in full, it was only entitled to 1,000 licenses, the quoted cost for which was $66,000. *Id*. at ¶ 13. As a result, IT Network Solutions alleges that it overpaid Kaseya by $73,984.89. *Id.* at ¶ 14. Further, according to IT Network Solutions, Kaseya stated that IT Network Solutions "forfeited" the overpayment, despite the alleged lack of such a provision in the contract IT Network Solutions signed. *Id.* at ¶¶

---

[2] The Complaint does not identify what "VSA" stands for or provide any other information about the software IT Network Solutions purchased. *See generally* Compl.

15–16. According to IT Network Solutions, the company demanded a return of the money it was overcharged, but no funds were returned. *Id.* at ¶ 17.

On April 7, 2014, Plaintiff filed this lawsuit in state court against Defendant. Defendant timely removed to this Court. Thereafter, Defendant filed this motion to dismiss, contending that (1) the contract in question contains a forum selection clause directing all litigation to be filed in state or federal courts located in Santa Clara County, California, and (2) Plaintiff fails to state a claim.

## II.    Analysis

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly'* s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. U PMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied,* 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal,* 556 U.S. at 684).

III.    **Analysis**

    *a.  Forum Selection Clause*

Defendant first asserts that the forum selection clause contained in the Maintenance End User License Agreement[3] ("EULA") and License EULA[4] should be enforced. Both EULAs contained the following clause: "[A]ny disputes, actions, claims, or causes of action arising out of or in connection with the Agreement or the Software or Services shall be subject to the exclusive jurisdiction of the state and federal courts located in Santa Clara County, California." Kroll Decl. Ex. L. Defendant further attaches an email dated January 3, 2011 from Kaseya International Accounting to Abdul Hassan, the "principal" of IT Network Solutions, informing Hassan that the "purchase and use of Kaseya Software and Services is governed by the Agreement as defined in the attached EULA," which, according to Defendant's counsel, is the same EULA attached in Exhibit L. Kroll Decl. at ¶ 14. Finally, Defendant attaches a declaration from Mark Combs, the Chief Operating Officer of Kaseya; Combs states that Plaintiff updated its license version of Kaseya's VSA software between August 15, 2010 and April 14, 2011, and in order for Plaintiff to install the updated software, Plaintiff would have been required to confirm that it had read and accepted the License EULA. Combs Decl. at ¶¶ 3, 4, 7, 8, 10.

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). The Third Circuit has held that

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

---

[3] Defendant asserts that Plaintiff received the Maintenance EULA on January 3, 2011, when Plaintiff received its annual maintenance subscription. *See* Kroll Decl.

[4] Defendant asserts that Plaintiff received the License EULA when it updated its license version of Kaseya's VSA software. *See* Combs Decl.

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir. 1983) overruled on

other grounds by *Lauro Lines v. Chasser*, 490 U.S. 495 (1989); *see also MoneyGram Payment*

*Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. App'x 844, 846 (3d Cir. 2003); *MTR Gaming*

*Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 373 (W.D. Pa. 2012).

Here, Plaintiff objects to the forum selection clause contained in the EULAs on the basis that

"litigating this case in California would be extremely inconvenient to the plaintiff." Pl.'s Opp. Br.

at 4.  Further, Plaintiff argues that the contracts containing the forum selection clauses were "the

product of unequal bargaining power" and unconscionable, because "the plaintiff was fraudulently

induced into signing the contract and never saw any of the contract terms until long after the

agreement was made." *Id.* at 5.

However, Plaintiff makes no specific showing regarding how litigating this case in California

would be inconvenient to the point of being unreasonable. Rather, Plaintiff merely states, cursorily,

that "IT Network Solutions does not have the resources or personnel to litigate this claim in

California."[5] Pl.'s Br. at 5. However, as Defendant points out, the added costs of litigating in

California would appear to be moderate at most; after all, Plaintiff has currently retained New

Jersey counsel and would presumably only incur (1) transition costs associated with getting its

local counsel admitted *pro hac vice* in California and/or procuring local counsel in California and

(2) travel costs for Plaintiff to appear in court in California. Further, mere financial burdens

associated with changing venue are not sufficient to overcome the presumptive validity of a forum

selection clause. *See, e.g.*, *Tricome v. Ebay, Inc.*, Civ. No. 09-2492, 2009 WL 3365873, at *4 (E.D.

Pa. Oct. 19, 2009) ("Although it may be challenging, the Court is not convinced that litigating this

---

[5] Hassan also states in his certification, without providing specifics, that "[i]t would be an
extreme financial hardship to require IT Network Solutions to prosecute this case in California."
Hassan Certif. at ¶ 19.

dispute in California would be prohibitively difficult for Plaintiff. Inconvenience or additional expense is not the test of unreasonableness 'since it may be assumed that the plaintiff received under the contract consideration for these things . . . .'") (quoting *Cent. Contracting Co. v. Maryland Casualty Co.*, 367 F.2d 341, 344 (3d Cir. 1966); *see also In re Diaz Contracting, Inc.*, 817 F.2d 1047, 1053 (3d Cir. 1987).

Second, Plaintiff's argument that it only agreed to the contract containing the forum selection clause through fraud and the result of unequal bargaining power is also unavailing. First, courts distinguish between contracts that are generally alleged to be the product of fraud and contracts containing forum selection clauses that are allegedly inserted into the contract through fraud. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F.Supp. 2d 465, 470 (D.N.J. 1998) ("A forum-selection clause will be set aside if it is the product of fraud or overreaching. This is so, however, only where 'the inclusion of that clause in the contract was the product of fraud or coercion.'") (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14 (1974)) (internal citation omitted). "It is insufficient, therefore, to allege that one was induced generally to enter into the contract itself as a result of fraud." *Hoffer v. InfoSpace.com, Inc.*, 102 F.Supp. 2d 556, 563–64 (D.N.J. 2000) (internal citation and quotation marks omitted). Here, Plaintiff only alleges that the contract itself was the product of unequal bargaining and that "the plaintiff was fraudulently induced into signing the contract and never saw any of the contract terms until long after the agreement was made," Pl.'s Opp. Br. at 5; Plaintiff makes no specific reference to the inclusion of the forum selection clause as the product of fraud or unequal bargaining power. Therefore, Plaintiff's general argument about the contract itself being the product of fraud or unequal bargaining power does not succeed in overcoming the presumptive validity of the forum selection clause. *Danka*, 21 F.Supp. 2d at 470; *Hoffer*, 102 F.Supp. 2d at 563–64.

Second, Plaintiff's argument that the contract was the result of unequal bargaining power is also unconvincing, because Plaintiff is a limited liability company, not an unsophisticated individual consumer, and because courts have routinely upheld forum selection clauses that were introduced after the sale was made. *See, e.g.*, *Kowalski v. YellowPages.com, LLC*, No. CIV.A. 09-2382 PGS, 2010 WL 3323749, at *4 (D.N.J. Aug. 18, 2010) *report and recommendation adopted*, No. CIV.A. 09-2382 PGS, 2010 WL 3810156 (D.N.J. Sept. 22, 2010) ("Courts also have recognized [forum selection clauses in] transactions where consumers made purchases prior to getting the detailed terms of the contract, noting that an insurance buyer pays the premium prior to getting the policy; a traveler pays for airplane or cruise tickets before receiving and being bound by the terms of the ticket; and a purchaser is bound by the terms located inside a product packaging which are accessible after the sale has been consummated.") (collecting cases). Further, Plaintiff offers no evidence that it attempted to negotiate the terms of the contract and was rebuffed, or that Plaintiff was coerced into signing the contract due to a lack of sophistication or other options. *See, e.g.*, *Danka*, 21 F. Supp. 2d at 471. Therefore, the Court finds the forum selection clause contained in the Maintenance EULA and License EULA to be valid and enforceable.

### b.  *§ 1404(a) Transfer*

Plaintiff requests that if the forum selection clause is to be enforced, the Court transfer the case instead of dismissing it.[6] "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3) [of the Federal Rules of

---

[6] The Court notes that Plaintiff does not engage in a detailed transfer analysis in its opposition brief. Rather, Plaintiff's argument in favor of transfer is encapsulated in a single paragraph, stating that "the court has authority to transfer venue pursuant to 28 U.S.C. § 1404(a)," including by a string cite to cases supporting this proposition, and ending with the statement that "[i]f the Court is considering dismissal on [forum selection] grounds, then exercise of the transfer would be preferable." Pl.'s Opp. Br. At 3. Further, Defendant does not address this argument in its reply. *See generally* Def.'s Reply Br.

Civil Procedure], the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013). "[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss. And if a defendant moves under § 1404(a), transfer, of course, is the proper vehicle (assuming the reasonableness of the forum selection clause)." *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289 (3d Cir. 2001).

In *Atlantic Marine*, the Supreme Court clarified the § 1404(a) analysis in the context of a forum selection clause.

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice.
>
> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.

*Atl. Marine*, 134 S. Ct. at 581 (internal citations and quotation marks omitted). The calculus changes in three ways. "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

Here, the Court finds transfer to the Northern District of California[7] under § 1404(a) to be appropriate. Excluding Plaintiff's choice of forum and concentrating on the public interest factors, as directed by *Atlantic Marine*, the Court evaluates:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Other public factors include, but are not limited to, "the unfairness of burdening citizens in an unrelated forum with jury duty." *Windt,* 529 F.3d at 192 (citing *Gulf Oil v. Gilbert,* 330 U.S. 501, 508–09 (1946)). "In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Delta Air Lines, Inc. v. Chimet, S.P.A.,* 619 F.3d 288, 300 (3d Cir. 2010) (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528 (1988)). Here, the public interest factors are largely neutral, which, combined with the valid and enforceable forum selection clause, overall militates in favor of transfer.

First, there would not any issues in enforcing a judgment entered by a federal court in California, weighing in favor of transfer. *See, e.g.*, *Maaco Franchising, Inc. v. Tainter*, No. CIV.A. 12-5500, 2013 WL 2475566, at *5 (E.D. Pa. June 10, 2013).

Second, as to practical considerations, it appears that Defendant's principal place of business is in Santa Clara County, California, and thus evidence and witnesses put on by Defendant

---

[7] The forum selection clause at issue directs all litigation to the state and federal courts located in Santa Clara, California. Santa Clara is located within the federal courts' Northern District of California. *See, About the* Court, U.S. DIST. CT., N. DIST. OF CA., http://www.cand.uscourts.gov/about (last accessed Feb. 18, 2015).

may be more easily accessible in the Northern District of California, though evidence and witnesses put on by Plaintiff may be less accessible in California. *See, e.g.*, *U.S. Mineral Products Co. v. T-Mar Const., Inc.*, No. CIV A 09-5895SRC, 2010 WL 703190, at *4 (D.N.J. Feb. 23, 2010). However, transferring the case instead of dismissing it would save Plaintiff the time and effort involved in re-filing its litigation. *See, e.g.*, *Brown v. Maue*, No. Civ. 1:CV-04-2647, 2005 WL 1420776 at *2 (M.D. Pa. June 15, 2005). Thus, this factor weighs slightly in favor of transfer.

Third, regarding court congestion, both the Northern District of California and the District of New Jersey are busy districts and evidence relating to their relative rates of congestion are mixed. According to the official, publicly available 2013 statistics regarding the federal judicial caseload, 6,184 civil cases were filed that year in the Northern District of California, whereas 8,190 civil cases were filed that year in the District of New Jersey, though in 2012, Northern District of California judges had slightly higher weighted case filings per judge than did District of New Jersey judges; thus, this factor is also neutral. *See Civil Cases Filed by District, 2013 Judicial Facts and Figures*, U.S. CTS., http://www.uscourts.gov/uscourts/Statistics/JudicialFactsAndFigures/2013/Table402.pdf (last accessed Feb. 18, 2015); *U.S. District Courts—Weighted and Unweighted Filings per Authorized Judgeship*, U.S. COURTS, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/ 2012/appendices/X01ASep12.pdf (last accessed Feb. 18, 2015).

Fourth, in connection with the local interest factor, California has an interest in deciding controversies involving defendant companies with their principal place of business in that state, though New Jersey also has an interest in deciding controversies involving its own local companies; thus, lacking facts to determine where the injury or complained-of actions took place, this factor is also neutral. *See, e.g.*, *U.S. Mineral Products*, 2010 WL 703190, at *4.

11

As to each state's public policies, the Court is unable to identify any public policies adopted by either state clearly favoring or disfavoring transfer in this case; accordingly, this factor is also neutral.[8]

---

[8] Transferring this case to the Northern District of California pursuant to the valid and enforceable forum selection clause means that, under *Atlantic Marine*, New Jersey's choice of law rules will not apply. *Atl. Marine*, 134 S. Ct. at 582.

New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008). New Jersey's most significant relationship test consists of two prongs. The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict between the laws exists. *Camp Jaycee*, 197 N.J. at 143–44, (citing *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). Where there is no actual conflict, the analysis ends and the court applies the law of the forum state. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997); *Rowe v. Hoffman–La Roche, Inc.*, 189 N.J. 615, 621 (2007). However, if the court finds that a conflict does exist, the court must move to the second prong and determine which jurisdiction has the "most significant relationship" to the claim at issue. *Camp Jaycee*, 197 N.J. at 136. Under the second step of the analysis, the Court determines which state has the "most significant relationship" to the claim by weighing the factors set forth in the Restatement section that corresponds to Plaintiffs' cause of action. *See, e.g.*, *Nafar v. Hollywood Tanning Sys.*, 339 Fed. App'x 216, 220 (3d Cir. 2009) (citing *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 463 (D.N.J. 2009)); *Camp Jaycee*, 197 N.J. at 143–44.

A choice of law analysis under California law requires a three-step inquiry: First, the court must determine whether the foreign law differs from California law. Second, if there is a difference, the court must determine whether a "true conflict" exists by determining whether both states have a legitimate interest in applying their own law to the case at hand . . . . Third, when both states have a legitimate interest in the application of their respective laws, the court analyzes the "comparative impairment" of the interests of the two states and applies the law of the state whose interest would be more impaired if its law were not applied.

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-05625 SI, 2013 WL 6327490, at *2 (N.D. Cal. Dec. 3, 2013) (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 225 (2010)).

Neither party has raised choice of law considerations in their briefs, though it appears that the Maintenance and License EULAs contain a choice of law provision stating that "[t]he agreement shall be governed by Delaware law and controlling United States federal law, without regard to the choice or conflicts of law provisions of any jurisdiction . . . ." Kroll Decl. Ex. K ¶13.2.

Because (1) neither party has briefed the choice of law issue, (2) choice of law considerations bear little weight on the transfer analysis, and (3) the rest of the public interest factors either favor or are neutral regarding transfer, the Court will not engage in a choice of law analysis here. *See, e.g.*, *McCraw v. GlaxoSmithKline*, No. CIV.A. 12-2119, 2014 WL 211343, at

Further, California federal judges may be presumed to be sufficiently familiar with the applicable state laws here, as federal judges must grapple with the laws of other states in diversity cases quite frequently, weighing in favor of transfer. *See, e.g.*, *Bus. Store, Inc. v. Mail Boxes Etc.*, No. CIV.A. 11-3662 FLW, 2012 WL 525966, at \*9 (D.N.J. Feb. 16, 2012).

Finally, I do not find that either New Jersey or California citizens would be unduly burdened by jury service in this case because the case concerns a New Jersey plaintiff and a California defendant, both of whose primary places of business are in their respective states, making the controversy local and pertinent to both states' communities; therefore, this factor is neutral. *See, e.g.*, *Business Store, Inc. v. Mail Boxes Etc.*, Civ. No. 11-cv-3662 (FLW), 2012 WL 525966 at \*9 (D.N.J. Feb. 16, 2012). Therefore, because the forum selection clause is valid and enforceable and the public interest factors pursuant to §1404(a) slightly weigh in favor of transfer, on balance, the Court finds that this case should be transferred to the Northern District of California.

Because the Court finds that transfer is appropriate, the Court will not reach the substantive arguments in Defendant's motion to dismiss for failure to state a claim.

## IV.    CONCLUSION

The Court finds that the forum selection clause contained in the Maintenance EULA and License EULA is valid and enforceable and further finds that the case should be transferred to the Northern District of California pursuant to § 1404(a). An appropriate order shall follow.

---

\*7 (E.D. Pa. Jan. 17, 2014) ("The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer. This is especially true where—as here—there are no complex questions of foreign law involved.") (internal citation and quotation marks omitted).

Date: February 20, 2015

/s/ Freda L. Wolfson
U.S. District Judge